IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs June 6, 2017

## DWIGHT HARRIS v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County
Nos. 15-00395, 14-02706   James C. Beasley, Jr., Judge**

_____

### No. W2016-01386-CCA-R3-PC

_____

Petitioner, Dwight Harris, pled guilty in case no. 14-02706 to aggravated burglary. He received a six-year sentence as a Range II multiple offender. Petitioner pled guilty in case no. 15-00395 to aggravated burglary and theft of property valued at more than $1,000. He received an effective sentence of six years as a Range I standard offender to be served consecutively to the sentence in case no. 14-02706. Petitioner subsequently filed a post-conviction petition alleging that he received ineffective assistance of counsel and that his guilty pleas were involuntary. After a hearing on the petition, it was denied by the post-conviction court. On appeal, Petitioner also asserts that he did not receive the effective assistance of counsel and that his guilty pleas were not voluntary. Following our review of the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, P.J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT W. WEDEMEYER, JJ., joined.

Anna R. Smith, Memphis, Tennessee, for the appellant, Dwight Harris.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Senior Counsel; Amy P. Weirich, District Attorney General; and Kenya Smith, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

*Guilty Plea Submission Hearings*

At the guilty plea submission hearing on December 16, 2014, in case no. 14-02706, the State set forth the following set of facts:

[O]n September the 28th, 2013, Patricia Leachman reported a burglary at her residence located at 369 Kerwin. The suspect entered the residence by kicking in the rear door. Property was taken. Property was taken from the residence. Copper wires hidden (indiscernible) things, heating appliances.

Responding officers processed the scene for prints. Prints were unknown at the time and latent print examiner Larry Preston advised that the prints lifted from the rear window and the broken glass were belonged [sic] to a Dwight Gasper [sic], Shelby County Sheriff's Office R&I 315107. Detective McMinn contacted the victim and she did not know the Defendant. It did occur here in Shelby County [.]

Petitioner told the trial court that trial counsel reviewed the guilty plea petition with him, and Petitioner understood the charges against him. He did not have any questions about the charges. The trial court explained all of Petitioner's rights to him concerning the guilty plea, and Petitioner said that he understood those rights and that he wanted to plead guilty. He also said that no one forced him to enter the pleas, and he was not promised anything. Petitioner told the trial court that he was satisfied with trial counsel, and he again said that he did not have any questions.

At the guilty plea submission hearing on June 5, 2015, in case no. 15-00395, the State set forth the following set of facts:

That on Thursday, May 8, the victim reported his home at 3395 Barbwood located here in Shelby County was burglarized. Entry was gained through a rear bedroom window. Several rods of copper were stolen from the living room and rear bedroom of the house. The copper rods were valued at around eighteen hundred dollars.

On that same day a witness, who was a neighbor, provided a description of a suspect whom he observed near the victim's home. He also gave a suspect [sic] of the vehicle - - of the vehicle the suspect was driving with a tag number.

Officers then stopped the defendant driving that same vehicle and observed in plain view the rods of copper inside the vehicle. The victim [sic] was taken down to the Memphis police department and he gave a signed written statement advising how he knew the rods of copper were stolen but that he was given the stolen copper from an individual he only knows by his first name. He said he was going to sell the stolen rods of

copper, and split the proceeds with the unknown individual who he said burglarized the victim's home.

Petitioner told the trial court that trial counsel reviewed the guilty plea petition with him and explained it to him. Petitioner also said that he understood the petition and the charges against him, and he did not have any questions. The trial court explained Petitioner's rights to him, and Petitioner said that he understood those rights. Petitioner told the trial court that he wanted to enter the plea and that no one was forcing him to plead guilty nor had they promised him anything. He said that he was satisfied with trial counsel, and he did not have any other questions.

*Post-Conviction Hearing*

Trial counsel testified that he did not counsel Petitioner to plead guilty. Rather, he and Petitioner discussed the facts of the case, and it was Petitioner's decision whether or not to plead guilty. Trial counsel agreed that the victim in Petitioner's first case could not be found at the address listed on the General Sessions court subpoena. Trial counsel may have discussed the difficulty in locating the victim with Petitioner but he "seldom" used that as a defense.

Trial counsel testified that he was "probably not" aware of Petitioner's level of education prior to entry of the guilty pleas. He remembered talking to Petitioner in his office several times, and he did not "see anything that was unusual about it[.]" Trial counsel did not recall if Petitioner told him that he was in "remedial school rather than the regular school system[.]" Trial counsel explained: "Normally what I do I size up my client by my and his discussion. If I'm discussing things with him, he's discussing things, he's articulating himself fairly well and I don't see any reason to think that that [sic] he doesn't understand, then I just do my usual thing." Trial counsel testified that he was aware of the intricacies of sentencing and the difference between consecutive and concurrent sentencing. Concerning Petitioner's sentence, trial counsel testified:

> Well if you commit a crime when out on bond it shall be consecutive to that sentence, it has to be. And normally the way I explain it to them, I don't necessarily use consecutive or concurrent, I say, I either tell them, I say, look, this case is going to run wild. In fact, your sentence really is going to be twelve years. I would have told him, your sentence is not going to be six years, it's going to be twelve years because one is going to run behind the other and its going to be running wild. They normally understand it being running wild.

Trial counsel testified that he counseled Petitioner prior to Petitioner's second guilty plea in case no. 15-00395. He discussed mandatory consecutive sentencing because Petitioner committed the offenses while on bond in case no. 14-02706. He

thought that Petitioner had pled guilty in case no. 14-02706 before he was indicted in case no. 15-00395. Trial counsel advised Petitioner "that it can't run concurrent." He said that Petitioner asked if the sentences in the two cases could be run together, and trial counsel said, "[Y]ou can't run them together, that's not possible." Trial counsel testified that Petitioner understood that consecutive sentences were mandatory in his cases. Trial counsel testified that he and Petitioner reviewed the evidence before Petitioner pled guilty in the second case. He thought that Petitioner confessed to having possession of the stolen items but said that he did not "break into the place." Trial counsel also thought that Petitioner was arrested a short time after the burglary occurred.

On cross-examination, trial counsel testified that he had practiced law for thirty-two years, and he did not think it was a good defense strategy to set cases for trial with the hope that the victim would not show up for court. He noted that some defendants thought the strategy would work, but trial counsel testified that "the very time you think they're not going to show up, you'll look in the audience, they'll be sitting back there." Trial counsel did not know whether Petitioner had been in "remedial school" but he knew that Petitioner had a prior criminal record and a lot of contact with the courts. Petitioner had also previously entered guilty pleas in other cases. Trial counsel specifically testified that he did not think that Petitioner was "slow." He said that it was ultimately Petitioner's decision to plead guilty.

Trial counsel testified that Petitioner "had a concern about whether he could run those cases together." Trial counsel stated, "But I told him there's no way for us to do it." Trial counsel testified that if he thought that Petitioner had a "learning problem" or did not understand what trial counsel was saying, counsel would "probably do a mental evaluation on him." Trial counsel agreed that Petitioner signed the judgment sheet in case no. 15-00395 which stated that the sentences would be consecutive.

Petitioner testified that he was in "resource" and attended school until the 11th grade. He did not graduate or receive his GED. When asked what "resource" meant, Petitioner testified: "They help you, help you, well, my reading is a little bit slower than others, so I have to get people to help me out a little bit more than the average person." Petitioner also said that he had difficulty with "reading comprehension or understanding material." Petitioner said that he told trial counsel that he did not graduate from high school and that he had problems with reading and writing. He did not tell trial counsel that he was in resource classes in school. They did not discuss whether he needed to have an evaluation done to determine his ability to stand trial or enter a plea.

Petitioner testified that when he entered the guilty plea on December 16, 2014, in case no. 14-02706, he and trial counsel had discussed his other burglary charge. He told trial counsel that he "already had one case that had been dismissed[.]" He also asked trial counsel: [C]an they pick it up[?], and trial counsel said, "Yes." Petitioner did not recall

- 4 -

trial counsel indicating that the second case would affect how he was sentenced. The following exchange then took place between post-conviction counsel and Petitioner:

Q: Do you remember asking him what would happen if I got charged for that second robbery [sic]?

A: My understanding he say [sic] give me one deal, that he can run all my charges and make it just one, one sentence.

Q: Okay. So at the time you entered that first guilty plea did you think that that case was covering all of the pending charges that you had?

A: Yes, ma'am.

Q: Okay. Does that include the other robbery [sic] charge that had been dismissed downstairs?

A. Yes, ma'am.

Q. Okay. When did you find out that that charge was not included in that plea agreement?

A. After, after I signed, when I got ready to sentence but right before I went into custody, the last judgment sheet I had signed.

Q. Okay. When you came back to plead for that second charge in June of 2015, about six months after your first plea agreement, do you remember talking to [trial counsel] at that point in time about what your sentence might look like?

A. Yeah, we discussed. He said you're looking at six years on this case.

Q. Okay. When he said that you were looking at six years on that case did you understand that to mean six years total for both cases or did you understand that to mean six years for that second case?

A. Six years altogether.

Q. Okay. At any point in time did [trial counsel] talk to you about spending a total of twelve years incarcerated?

A. No, ma'am.

On cross-examination, Petitioner testified that trial counsel told him that "he's going to get both of my charges and run it altogether, make it one sentence. And it's suppose[d] to be six years. That's what my understanding that I had signed." Petitioner indicated that even though the judgment sheet said that the sentence in case no. 15-00395 would be served consecutively to the sentence in case no. 14-02706, he thought that it was "one sentence[.]" Petitioner claimed that he did not understand the word "consecutive" when it was mentioned by the trial court and the prosecutor at the guilty plea submission hearing, and he did not ask what the word meant when the trial court asked if he had any questions about the plea agreement. Petitioner reiterated that he thought that he was pleading guilty to an effective six-year sentence rather than a twelve-year sentence.

On re-direct examination, Petitioner testified that twelve years was never mentioned during the guilty plea submission hearing. He also said that no one defined consecutive or concurrent sentences during the process.

*Analysis*

The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. *See State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). During our review of the issues raised, we will afford those findings of fact the weight of a jury verdict, and this Court is bound by the post-conviction court's findings unless the evidence in the record preponderates against those findings. *See Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *Alley v. State*, 958 S.W.2d 138, 147 (Tenn. Crim. App. 1997). This court may not reweigh or reevaluate the evidence, nor substitute its inferences for those drawn by the post-conviction court. *See State v. Honeycutt*, 54 S.W.3d 762, 766 (Tenn. 2001). However, the post-conviction court's conclusions of law are reviewed under a purely *de novo* standard with no presumption of correctness. *See Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001).

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, he must first establish that the services rendered or the advice given were below the standard range of competence. Second, he must show that the deficiencies "actually had an adverse effect on the defense." *Strickland v. Washington,* 466 U.S. 668, 693 (1984). As to guilty pleas, the petitioner must establish a reasonable probability that, but for the errors of his counsel, he would not have entered the plea. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). When determining the knowing and voluntary nature of a guilty plea, the standard is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970); *see also State v. Pettus*, 986 S.W.2d 540, 542 (Tenn. 1999).

In order for a guilty plea to be voluntary, the petitioner must have an understanding of the charges against him and the consequences of pleading guilty, including "the sentence that he will be forced to serve as the result of his guilty plea and conviction." *Blankenship v. State,* 858 S.W.2d 897, 905 (Tenn. 1993). A petitioner's solemn declaration in open court that his or her plea is knowing and voluntary creates a formidable barrier in any subsequent collateral proceeding because these declarations "carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

At the conclusion of the post-conviction hearing in this case, the post-conviction court made the following findings:

> I've listened to the testimony. I think [trial counsel] is obviously a trained criminal trial attorney. I don't know if much of his practice is civil, I suspect a huge majority of his law practice is criminal and he's been practicing criminal law for I think he said thirty years.
>
> The law is very clear that if you commit a crime while you're on bond that sentence is going to be consecutive. It's very clear that under that law these sentences cannot legally be run concurrent. The State knows that. The defense attorneys know that.
>
> I find it hard to believe that a seasoned, experienced criminal defense lawyer would tell his client that he's going to get concurrent time when he's got a crime that was committed while he was on bond. That pretty much defies logic.
>
> And I have to judge the credibility of [trial counsel], he's been practicing law down here for many, many, many years versus [Petitioner] who has been in the system over a number of years. [Petitioner] tells me that his lawyer just completely lied about how these negotiations were going versus an attorney who, quite frankly, as he put it, just assume [sic] if his client doesn't want to take offers set it for trial and just try it. That if [Petitioner] had said he wanted to go to trial on these cases, that [trial counsel] would [have] scheduled them for trial and tried them.
>
> I think more logically it is that [trial counsel] was attempting to negotiate some type of a settlement for [Petitioner]. That the sentence had to be consecutive. And from standpoint of judging credibility I do not find that I believe that [trial counsel] intentionally told [Petitioner] something that was not true.
>
> I think [Petitioner] negotiated a guilty plea through [trial counsel] and entered the plea freely, voluntarily and knowingly and then sought

probation. And at the probation hearing the request was denied and [Petitioner] at that point had to go serve his sentence. And unfortunately twelve years is a long time and all of a sudden at that point he decided that he didn't know what he was doing and that his lawyer didn't advise him correctly. I don't find that testimony to be credible.

I think the burden is on [Petitioner] to convince me that he didn't understand and I don't believe from the testimony that he didn't understand that his six[-]year sentence was consecutive to the other six year sentence. It was advised by his attorney, in my opinion it was advised by the State, it was advised by me.

And I don't think [Petitioner] has got any mental issues that would not allow him to understand what running wild and what that means that that means one going after the other. And I don't - - if there was any misunderstanding [Petitioner] I think is capable of saying I don't understand and we've never heard anything until post-conviction and post-denial of probation that he didn't understand that.

So I'm of the opinion that he has not carried his burden of proof. That he had not shown that he did not freely and voluntarily and knowingly enter his guilty plea. Likewise, I find that [trial counsel] adequately represent[ed] [Petitioner] in handling of these cases. That he did provide effective assistance of counsel and that [Petitioner's] guilty pleas should stand and I will deny the petition for post-conviction relief.

We conclude that the record supports the post-conviction court's findings that Petitioner's guilty pleas were knowingly and voluntarily entered and that Petitioner received the effective assistance of counsel. The gist of Petitioner's argument is that he did not have the mental capacity to understand the guilty pleas or the consequences of the pleas because he was in resource classes in school and that he did not graduate from high school or obtain his GED. He further asserts that he did not understand the difference between concurrent and consecutive sentencing and that trial counsel should have requested a mental health evaluation of him.

There is nothing in the record, other than Petitioner's testimony (which the post-conviction court found to not be credible), to indicate that Petitioner did not have the mental capacity to enter his guilty pleas in case nos. 14-02706 and 15-00395 or that he did not understand the difference between consecutive and concurrent sentencing. The sole facts that Petitioner may have been in resources classes in school and that he did not complete high school or obtain his GED does not prove that he lacked the mental capacity to understand the pleas. Petitioner testified that being in "resource" classes meant that his reading was a "little bit slower" than others and that he had difficulty with

- 8 -

"reading comprehension or understanding material." However, Petitioner presented no other proof of his mental capacity. He also admitted that he did not tell trial counsel that he was in resources classes in school. Petitioner testified that he told trial counsel that he did not graduate from high school and that he had problems with reading and writing.

Trial counsel testified that he did not notice anything unusual about Petitioner when they talked in trial counsel's office. Trial counsel testified that if he had thought that Petitioner had a "learning problem" or did not understand what trial counsel was saying, counsel would have probably requested a mental evaluation. Trial counsel specifically stated that he did not think that Petitioner was "slow."

Trial counsel testified that he counseled Petitioner prior to Petitioner's second guilty plea in case no. 15-00395. They discussed mandatory consecutive sentencing because Petitioner committed the offenses while on bond in case no. 14-02706. Trial counsel advised Petitioner "that it can't run concurrent." He said that Petitioner asked if the sentences in the two cases could be run together, and trial counsel said, "[Y]ou can't run them together, that's not possible." Trial counsel testified that Petitioner understood that consecutive sentences were mandatory in his cases. Petitioner signed the judgment sheet in case no. 15-00395 which stated that the sentences would be consecutive. Trial counsel also pointed out that Petitioner had a prior criminal record and frequent contact with the courts. Petitioner had also entered guilty pleas in other cases. At the guilty plea submission hearings, Petitioner told the trial court that he understood the charges against him, and he did not have any questions. The post-conviction court specifically stated that it accredited trial counsel's testimony.

We conclude that Petitioner failed to meet his burden of demonstrating by clear and convincing evidence that he was denied the effective assistance of trial counsel. We further conclude that Petitioner's guilty pleas were knowing, intelligent, and voluntary. Petitioner is not entitled to relief on this issue.

CONCLUSION

Based on the foregoing, we affirm the judgment of the post-conviction court.

_____
THOMAS T. WOODALL, PRESIDING JUDGE